MARKS et al. v. FIREMAN'S
FUND INS. CO.

United States District Court
S. D. New York.
Feb. 2, 1953.

Halperin, Natanson, Shivitz & Scholer, New York City (Harry J. Halperin, Samuel L. Scholer, Edmund B. Hennefeld, New York City, of counsel), for plaintiffs.

Bigham, Englar, Jones & Houston, New York City (James M. Hughes, Jr., New York City, of counsel), for defendant.

MURPHY, District Judge.

This is a motion by defendant for a change of venue under 28 U.S.C.A. § 1404 (a) on the grounds of convenience of parties, witnesses and the ends of justice. Plaintiffs are residents of Illinois, doing business in the city of Chicago and not in this District. Defendant, a California corporation, is licensed and doing business in the State of New York within this District as well as in other States including Illinois. The cause of action is one based on a contract of insurance of plaintiffs' furs against loss by burglary and larceny. The contract was concededly negotiated, made and delivered in the city of Chicago, Illinois. The burglary and larceny of plaintiffs' furs occurred at the Chase Hotel, St. Louis, Missouri.

The complaint alleges that on October 1, 1951, defendant executed and delivered to plaintiffs its policy, No. SFP 79256, covering plaintiffs' fur garments described in the policy, wherever located within the United States and Canada, subject to certain exclusions and limitations set forth in the policy, including paragraph 5 (f) which limited coverage to $15,000. It is alleged that by endorsement in writing, paragraph 5 (f) was modified to increase the limit of coverage to $50,000. It is further alleged that on December 6, 1951, defendant issued additional insurance to plaintiffs under this policy pursuant to a written confirmation memorandum so as to cover a trip to the Chase Hotel in St. Louis, Missouri, and to increase by $71,350 the limit of coverage, making total coverage amounting to $121,350. On December 8 or 9, 1951, plaintiffs allege that the premises at the Chase Hotel referred to in the confirmation memorandum were burglarized and that its fur garments covered in the insurance policy were stolen. The value of these garments, according to plaintiffs, was $134,600, and their suit is for $121,350 under the policy.

Defendant has interposed no answer to plaintiffs' complaint which was filed in this District in November, 1952. It has indicated, however, by affidavits that there is a controversy between the parties based upon the "alleged agreement for increase of insurance and coverage under the policy as to the liability, if any, to the plaintiffs, in connection with the loss alleged to have been sustained by plaintiff; the defendant herein asserting, that the loss reported to have been sustained by plaintiff, was not within the terms and conditions of the policy of insurance * * * and that by reason thereof the defendant is not liable to plaintiffs in any amount." Defendant claims, in support of its motion, that its defense will require the testimony of a large number of witnesses who reside and do business in the city of Chicago, such as its division superintendent and two of its underwriters; members of an agency through which the policy in question was issued; various employees and principals of a firm who investigated the claimed loss and various employees of an auditing firm who made investigations and audits with respect to the amount of this loss, all of whom are located in the city of Chicago. None of these prospective witnesses, it should be noted, is referred to by name, except the three employees of defendant. Defendant also claims, "Various witnesses, consisting of police officers and other persons who made investigations with respect to the circumstances in connection with the alleged burglarizing of the premises in the Chase Hotel, St. Louis, Missouri; all of whom reside in said City of St. Louis, which said city is very much closer to the City of Chicago than to the City of New York", but defendant does not indicate whether such witnesses will ever be called by it, whether the trial is held in either Chicago or New York. Similarly, defendant claims that all of its records and files "with respect to the policy in question, are located

in the offices of the defendant in Chicago, Illinois", but defendant does not indicate that these unspecified records and files will be produced at trial whether held in Chicago or New York. Again, defendant claims that plaintiffs' agent who negotiated for the policy in question, resides and does business in Chicago and not in New York, but defendant does not indicate that his testimony will be required by it at a trial whether held in Chicago or New York.

For their part, plaintiffs insist that the Southern District of New York is a more convenient forum because of the necessity of proving their damage by calling unspecified witnesses expert on the value of furs who can be found in the New York area but not in Chicago. In reply defendant claims that such witnesses are also available in Chicago.

It is conceded that the venue statute of the United States permitted the plaintiffs to commence their action in the Southern District of New York and empowered that court to entertain it. Section 1391, 28 U.S. C.A. provides in part: "(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." The defendant in this case is a California corporation which is doing a considerable business, in fact more business than in any other State outside its domicile, in New York. It is licensed to do business and has appointed the Superintendent of Insurance as its agent for purpose of process in New York since 1884. There can be no question of the jurisdiction and venue of this court with respect to defendant and this suit. See Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788; Ronson Art Metal Works, Inc. v. Brown & Bigelow, Inc., D.C.S.D.N.Y., 104 F.Supp. 716.

But conceding jurisdiction and venue, the question remains whether the court must entertain the suit. In 1948 Congress enacted § 1404(a), 28 U.S.C.A., which provides in part that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that the statute is based on the doctrine of *forum non conveniens*. See H. R. Rep. No. 2646, 79th Cong. 2d Sess. p. A 127. Prior to its enactment it was possible to transfer a suit between divisions of the same district when the parties so stipulated. 36 Stat. 1103 (1911), 28 U.S.C.A., former § 119 (1940). While such transfers are still preserved, 28 U.S.C.A. § 1404(b), the statute makes possible a discretionary transfer of civil actions from one district to another which was not possible before its enactment. Cf. Brown v. Heinen, D.C. Minn., 61 F.Supp. 563. Prior to the enactment of § 1404(a) a suit brought in an inconvenient federal forum had to be dismissed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. It could not be transferred to another district as, for example, in local State practice. Cf. N.Y. Civil Practice Act, § 187.

In Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, 330, certiorari denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624, Judge Frank said that, "[B]y § 1404(a), Congress did not alter the standard theretofore embodied in the doctrine of *forum non conveniens,* despite the fact that that section is applicable to types of actions to which that doctrine did not previously apply." The classic statement of what factors ought to be considered by a federal forum in applying *forum non conveniens* prior to the enactment of § 1404(a) has been made by Jackson, J., in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, at pages 508–509, 67 S.Ct. 839, 91 L.Ed. 1055. As private interest of the litigant, these factors are enumerated: access to proof; availability of compulsory process for unwilling witnesses; cost of obtaining attendance of witnesses; possibility of view of premises; and enforcibility of judgment if one is obtained. As factors of public interest, there are listed: congested calendars; burden of jury duty; local interest in localized controversy; and desirability of having the forum apply the State law of the State in which it sits.

The burden of establishing this inconvenience is emphatically that of the defendant. "But unless the balance is strong-

ly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501, at page 508, 67 S.Ct. at page 843; Ford Motor Co. v. Ryan, supra, 182 F.2d 329, at page 330. So far as the "private interest of the litigant" is concerned in this case, it is not by any means clear that whatever controversy may develop between the parties may be resolved in the Southern District of New York only with great inconvenience to defendant. Not having filed its answer, defendant insists that there will be a controversy based upon the "alleged agreement for increase of insurance and coverage." Plaintiffs, for their part, allege that their cause of action in this respect is based solely upon written instruments. This is not denied by defendant, and it may well be that the possible "controversy" may be one solely of construction and interpretation of such instruments.

A sharp line of demarcation has been drawn by the State courts in New York between tort and contract cases in the application of the doctrine of *forum non conveniens*. In tort, jurisdiction has been refused in suits arising outside the State between non-residents, Collard v. Beach, 1st Dept., 1903, 81 App.Div. 582, 81 N.Y.S. 619, and indeed even where the cause of action arose within the State between non-residents. Gainer v. Donner, Sup.1931, 140 Misc. 841, 251 N.Y.S. 713. On the other hand, the New York courts have said that the power to refuse to entertain jurisdiction does not extend to actions on contract. See Smith v. Crocker, 1st Dept., 1897, 14 App.Div. 245, 43 N.Y.S. 427, 429, affirmed memorandum, 162 N.Y. 600, 57 N.E. 1124; Wedemann v. United States Trust Co., 258 N.Y. 315 at pages 317–318, 179 N.E. 712, 79 A.L.R. 1320; Gregonis v. Philadelphia & R. C. & I. Co., 235 N.Y. 152 at page 160, 139 N.E. 223, 32 A.L.R. 1. And such has apparently been the practice of State trial courts. Rederiet Ocean Aktieselskab v. W. A. Kirk & Co., Sup., 1944, 51 N.Y.S.2d 565; Osborne v. Banco Aleman-Antioqueno, Mun.Ct., 1941, 176 Misc. 664, 29 N.Y.S.2d 236. Customarily this tendency to retain jurisdiction in contract cases is followed by State courts elsewhere. Hagen v. Viney, 124 Fla. 747, 169 So. 391; Trojan Engineering Corp. v. Green Mountain Power Corp., 293 Mass. 377, 200 N.E. 117; Quigley Co. v. Asbestos Ltd., 134 N.J.Eq. 312, 35 A.2d 432; Standard Surety & Cas. Co. of N. Y. v. Caravel Industries Corp., 128 N.J.Eq. 104, 15 A.2d 258. Whatever justification exists for this policy may be found in the fact that the amount of recovery in tort is largely within the discretion of the jury and big city juries are accustomed to render relatively large verdicts so that it may be unfair to the defendant to try a tort case far from the place of the tort. On the other hand, in actions based on breach of contract there is not the same probability that recovery will vary with the place of trial because the rules of damage are more restrictive in contract than in tort. This distinction between tort and contract in refusing to entertain jurisdiction of a suit between non-residents may well be part of the federal rule. "The law of New York as to the discretion of a court to apply the doctrine of *forum non conveniens*, and as to the standards that guide discretion is, so far as here involved, the same as the federal rule." Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501 at page 509, 67 S.Ct. 839, at page 843, 91 L.Ed. 1055.

So far then as the nature of the controversy in the instant case is a factor, it is one which favors retention of jurisdiction. It is not clear, in the absence of defendant's answer, what the boundaries of the controversy between the parties may ultimately embrace. At this stage of the proceeding, we have only the allegation of the defendant that it will include a controversy over a written agreement, and no indication that it will extend beyond such agreement. With respect to convenience of witnesses, it should be emphasized that defendant may not complain on this motion about inconvenience to plaintiffs' witnesses. See Sun Oil Co. v. Lederle, 6 Cir., 199 F.2d 423 at page 424. With respect to its own witnesses, defendant has specified only three as necessary to its probable defense. These three, as residents of Illinois, while not subject to compulsory process in the

Southern District of New York, are nevertheless under control of defendant as its own employees. While defendant mentions various other persons in Chicago, none of them are referred to by name. A similar reference is made by defendant to witnesses in St. Louis, Missouri, the situs of plaintiffs' alleged loss, but these unnamed persons, while not subject to compulsory process in the Southern District of New York, would not be available under such process in Chicago either. Moreover defendant does not even allege that the St. Louis witnesses will be necessary to its probable defense or called by it at trial.

"Factors of public interest" remain to be considered. Defendant alleges that the suit may be reached for trial much sooner in Chicago than in the Southern District of New York. It is rather unusual, to say the least, when a defendant seeks a speedy trial and objects to the delay of a congested court calendar as inconvenient to it. It might also be said that additional burden of jury service would be imposed upon the citizens of New York. But such objections assume that the controversy will be disposed of by trial of issues of fact rather than by summary judgment—a matter about which one can only speculate at this stage of the proceeding in absence of answer by defendant.

It must be conceded that the substantive law of the State of Illinois would govern the controversy in question regardless of the forum in which it is resolved. Restatement, Conflict of Laws, § 318; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. No doubt a federal forum in Illinois is more at home with the State law that must govern this case than one in New York. But at this stage of the proceeding in absence of answer it cannot be determined whether the matter in controversy is one about which the substantive law of New York and Illinois vary. The plaintiffs have the initial choice of forum. There is no allegation that they have "shopped around" for a forum giving them some procedural advantage in selecting a federal court in New York rather than Illinois. And there can be no

claim that they could obtain a substantive advantage.

Accordingly, the motion of defendant is denied.

Settle order.